UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| Mr. Manuel A. Colón Cabrera<br><br>Plaintiff<br><br>v.<br><br>Esso Standard Oil Co.<br>(Puerto Rico),<br>Environmental Resource Technologies, Corp.<br>(ERTEC)<br>Jose Carlos Agrelot Peña.<br><br>Defendants | CIVIL NO.<br><br>INJUNCTION<br>FOR<br><br>VIOLATIONS TO THE<br>RESOURCE<br>CONSERVATION AND<br>RECOVERY ACT (RCRA)<br><br>CIVIL PENALTIES |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COME NOW** the plaintiff, identified in the caption of this complaint, by and through their undersigned attorney, and respectfully state, allege and pray:

### NATURE OF THE ACTION AND JURISDICTION

1. This is a civil action brought because a controversy under Article 3 of the United States Constitution has arisen and is brought pursuant to the Resource Conservation and Recovery Act (RCRA) section 7002(a)(1)(A) and 7002(a)(1)(B), as amended, 42 U.S.C. 6972 (a)(1)(A) and (a)(1)(B), inasmuch as it allows the imposition of

civil penalties, and the granting of injunctive, declaratory and related equitable relief. Notice requirements have been satisfied pursuant to RCRA 7002(c), 42 U.S.C. sec. 6972(c) and otherwise as provided by law and/or regulation. See, Attached Letter and Proofs of Service.  In particular, Plaintiff file in the United States District Court for the District of Puerto Rico a citizen suit under RCRA  The law suit seeks enforcement and/or injunctive relief against Esso as violator of R.C.R.A, pursuant 42 U.S.C. sec. 6972 (a)(1)(A) 42 U.S.C. 6972 (a)(1)(B).

2.      Jurisdiction of this court is invoked under:, 42 U.S.C. 6972(c), 28 U.S.C. 1331 (federal question) and   28 U.S.C. 1337 (civil actions arising under Act of Congress regulating commerce), as amended or superseded by other statutes.

3.      Venue properly lies in this district under 42 U.S.C.  6972(B)(2), and 28 U.S.C. section 1391(b) because the defendants reside in this district and it is where the property which is the subject of this action is situated.



**PARTIES**

4.      At all times referred herein Esso Standard Oil Company (Puerto Rico) ("Esso") and/or Exxon Mobil Company ("Exxon"), were the owners and/or operators of gasoline, diesel Underground Storage Tanks (USTs) and servicing equipment in an Esso Service Station at Road 2, km. 29,in the Municipality of Vega Alta, Puerto Rico (the Service Station).

5.      Exxon is the parent company of Esso.

6.      At all times hereinafter mentioned, Defendant Esso, is a Puerto Rico corporation duly

authorized and registered with the Secretary of State to perform authorized business in the Commonwealth of Puerto Rico, with principal place of business in this district.

7.  Environmental Resource Technologies, Corp. (ERTEC), is a Puerto Rico corporation duly authorized and registered with the Secretary of State to perform authorized business in the Commonwealth of Puerto Rico, with principal place of business in this district.

8.  Engineer Jose Carlos Agrelot Peña is the owner, chief executive officer, stockholder or principal of ERTEC.

## STATEMENT OF FACTS



9.  Gasoline leaks from the Service Station USTs and product lines have been known to Esso since, at least, 1983. The disposing of used oil and grease into the facility soils also has been known to Esso since, at least 1978.

10. This contamination, which has caused considerable damages to Mr. Manuel A. Colón Cabrera properties, remains unreported and unabated. At present the petroleum contamination has not been delineated nor removed.

11. That in January 5, 1977, Esso was informed that used oil was been disposed on the station grounds and that they were gaining access to the surface waters.

12. In June 23, 1983, Esso was also informed that **their** facility operator was disposing grease on the ground behind the service station.

13.   In June 23, 1983 Esso conducted an investigation and found a leak of leaded and unleaded gasoline. In December 27, 1984 Esso admitted the release of 792 gallons of product into the facility soils. This matter has not been, to our knowledge, reported to the Puerto Rico Environmental Quality Board (EQB). On November 23, 1978 Esso admitted the mishandling of used oil and grease by **its facility operator**. )



14.   On or about September 30, 1991 Esso contracted the services of Soil Tech (**now ERTEC**) to perform a Tank Closure Report. The purpose of the evaluation was to determine the conditions of the removed tanks and the soil surrounding the same. The investigation results where presented to the Puerto Rico Environmental Quality Board (EQB) on February 12, 1992. The results showed the presence of Total Petroleum Hydrocarbon (TPH) in the facility soils. TPH was found in concentrations ranging from not detected to 5,919 mg/kg in the soils. The TPH concentrations found where above the acceptable 100 mg/kg level by the EQB. The investigation also reported the finding of one UST with various corrosion holes in the bottom of the tank. Soil Tech (now ERTEC) recommended Esso **not** to further investigate the environmental conditions at the site.

15.   In May 22, 2001, the EQB ordered Esso to define the extent of the contamination at the site. In August 9, 2004, ERTEC requested the EQB to release them from the agency requirement to investigate the presence of **organic lead**, knowingly that leaded gasoline was released at the site.

16.     In February 7, 2005, ERTEC certified Mr. Colón Cabrera that the vertical and horizontal delineation of the Service Station contamination **was** delineated. Later, in April 29, 2009, ERTEC admitted, to Mr. Colón Cabrera, that the vertical and horizontal delineation of the service station contamination **has not been** delineated.

17.     In February 5, 2007 ERTEC presented ESSO with a Phase II Environmental Evaluation of the Service Station. The Phase II Environmental Evaluation concluded, among others, that the groundwater below the Service Station is contaminated with the gasoline constituent benzene.



18.     In 1974, the U.S. Congress passed the Safe Drinking Water Act (SDWA) (42 U.S.C. 300f et seq). This law required Environmental Protection Agency (EPA) to determine safe levels of chemicals in drinking water which do or may cause health problems. Benzene is covered by the S.D.W.A. and its implementing regulations.

19.     Benzene is a hazardous substance regulated by the EPA. The Maximum Contaminant Level (MCL) of dissolved benzene in ground water, established by EPA, is 5 micrograms per liter of water (**5.0μg/l**). For drinking water is **0. 5μg/l**.  Groundwater samples obtained in August 2006, below the Service Station, reveals dissolved concentrations of benzene as high as **15,000 μg/l**.

20. In 2006 Friedman & Bruya, Environmental Chemists informed ERTEC that a large pool of product **containing organic lead** was found in the groundwater beneath the Service Station. At present Esso has not reported or investigated the horizontal and vertical extend of the **groundwater organic lead contamination**.

21. In 2004 ERTEC, while drilling borings at the Service Station, perforated the diesel line releasing product that contributed to the soils and groundwater contamination. The line was not fixed immediately. In August 27, 2004 Esso made the determination that the incident was caused due to *the use of improper equipment to verify the presence of underground pipelines. Among the excuses given by ERTEC was pressure from the lawyer to expedite the work.*



22. In January 30, 2009, it was found that ERTEC left the facility monitoring well open (without lock-caps) converting them into injection wells. This improper action causes a further spread of the contamination in the aquifer below. Therefore, Mr. Colón Cabrera specifically alleges that ERTEC and José Carlos Agrelot Peña, also, contributed to the contamination at the site.

### FIRST CAUSE OF ACTION
### BASED ON VIOLATION OF RCRA SUBTITLE IX
### UNDER 42 U.S.C. sec. 6972(a)(1)(A) and 6972)(a)(1)(B)

23. Plaintiff repeats and reiterates each and every allegation contained in paragraphs 1

through 22 as if fully set forth herein.

24. Esso's actions and/or omissions violate regulations, conditions, requirements, prohibitions or orders applicable to U.S.T.s. Those regulations, conditions, requirements, prohibitions, are enforced in Puerto Rico pursuant to the cooperative agreement entered into by the Commonwealth and the EPA pursuant to RCRA Subchapter IX 42 U.S.C. sec. 6991, et seq.

25. The specific provisions which have been violated of the Puerto Rico EQB's Underground Storage Tank Regulations, and its Federal counterparts, in 40 CFR parts 280, include but are not limited to:



**Rule 501 – Reporting of Suspected Releases**: Owners and operators must report to the Board within 24 hrs, and following the procedures in Rule 503 for any of the following conditions:

> A. The discovery by owners and operators or others of released regulated substances at the USTs site or in the surroundings area.

**Rule 503 – Release Investigation and Confirmation Steps:** Unless corrective action is initiated in accordance with Part VI, owners and operators must immediately investigate and confirm all suspected releases of regulated substances requiring reporting under Rule 501 within seven (7) days, using either the following steps or another procedure approved by the Board.

> A. System Test. Owners and operators must conduct test [according to the requirements for tightness testing in Rule 404 (c)and Rule 405 (B)] that determine whether a leak exist in that portion of the tank that routinely contains the regulated substance, owners and

> B. Operators must owners and operators must or the attached delivery piping, or both.

The Commonwealth of Puerto Rico Underground Storage Tank Regulation *Part VI – Release Response and Corrective Action for UST Systems Containing Petroleum or Hazardous Substances* states:

**Rule 601 – General:** Owners and operators of petroleum or hazardous substances UST systems must, in response to a confirmed release from UST system, comply with the requirements of this Part except for UST's excluded under rule 103 (B) and UST systems under section 3004 (u) of the resources conservation and Recovery Act, as amended.

**Rule 602 – Initial response:** Upon confirmation of a release in accordance with Rule 503 or after a release from the UST system is identified in any other manner, owners and operators must perform the following initial response actions within 24 hours of a release.



      A.      Report the release to the Board (e.g. by telephone or electronic mail).

      B.      Take immediate action to prevent any further release of the regulated substance into the environment.

**Rule 603 - Initial Abatement Measures and Site Check:**

      A.      Unless directed to do otherwise by the Board, owners and operators must perform the following abatement measures:

            6. Investigate to determine the possible presence of free product, and begin free product removal as soon as practicable and in accordance with Rule 605.

**Rule 604 - Initial Site Characterization:**

      A.      Unless directed to do otherwise by the Board, owners and operators must assemble information about the site and the nature of the release, including information gained while confirming the release or completing the initial abatement measures in Rule 601 and rule 602. This information must include, but is not necessary limited to, the following:

            1. Data on the nature and estimated quantity of release.

      C.      Within 45 days of release confirmation, owners and operators must submit the information collected in compliance with paragraph (A) of this Rule to the Board in a manner that demonstrate its applicability and technical adequacy, or in a format and according to the schedule required by the Board.

### Rule 606 – Investigation for Soil and Ground Water Cleanup:



      A.      In order to determine the full extent and location of soil contaminated by the release and the presence and concentrations of dissolved product contamination in the groundwater, owners and operators must conduct investigation of the release, release site, and the surrounding area possibly affected by the release if any of the following conditions exist:

           1. There is evidence that groundwater wells have been affected by the release.

           2. There is evidence that contaminated soils may be in contact with groundwater.

### Rule 1102 – General prohibitions:

      B.      No person shall cause or permit the contamination of existing or potential underground source of drinking water.

26. In sum, a review of the Puerto Rico Environmental Quality Board Underground Storage Tank file number UT-02-86-1255 reveals that Esso and/or EXXON are in continuous violation of Rules 501, 503, 601, 602 (A) (B), 603 (A), 604 (A) (C), 606 (A) (1) (3), 607 and 1102 (B) requirements, and its federal counterparts found in 40 C.F.R. secs. 280.50, 280.52, 280.60, 280.61, 280.62, 280.63, 280.65 and 280.66.

27.     The violations include, amongst other, as follows: failing to report, investigate, or clean up spills from underground gasoline storage tanks; failing to take immediate action to prevent additional spills or to identify and mitigate or mitigate danger of fire explosions, or toxic vapors; failure to undertake initial characterizations of the affected properties and quality of waters; failure to remove the free product; failure to notify closing or modification of operations and contaminating the waters of Puerto Rico.



28.     Disposal or discarding and/or abandoning of a solid waste and hazardous waste in or on the land without careful planning and management can present a danger to human health and the environment. RCRA defines the term "solid waste" as "any discarded material." See, 42 USC sec. 6903(27); 42 U.S.C. sec. 6903(3); 40 C.F.R. sec 261.2(a)(2);40 C.F.R. sec. 261.2(b).

29.     In light of the above, gasoline, diesel, grease and used oil and any combinations there from are no longer a useful product after they leak into, and contaminate, the soil or groundwater.  At this point, the gasoline cannot be re-used or recycled.

30.     As a result, it must be said that the gasoline and diesel, grease and used oil have been abandoned via the leakage and or spill into the soil and groundwater. Therefore, Esso and Exxon have inadequately, stored and disposed of as  "non-hazardous", "special" and/or industrial waste in violation of RCRA Subchapter III in a facility

which is not a permitted by the U.S Environmental Protection Agency as a RCRA final disposal facility. These violations to RCRA also remain unabated.

31.  The imminent and substantial endangerment to health or to the environment is caused by the continuous contamination of the groundwater aquifer below the service station, a fact known to Esso for at least seventeen (17) years, without properly acting to report, investigate and contain such contamination.



32.  No effective clean up of the property soils or groundwater has been undertaken by Esso and Exxon, therefore, Mr. Manuel A. Colón Cabrera is continually exposed to the hazardous, toxic and carcinogenous components including benzene, toluene, or lead which poison his land, the waters and the environment.

33.  This situation is the result of Esso's, and Exxon's, actions in the past and present as owners and or operators of a storage or disposal facility and as such contributing to the past and present handling, storage, treatment or disposal of solid or hazardous waste.

34.  Plaintiff requests that pursuant to RCRA, 42 U.S.C. 6901 et seq. and particularly 42 U.S.C. 6972, that the Court Orders Defendant to comply with the above regulations and that Plaintiff be awarded all costs of the action including reasonable attorneys and expert witness fees.

## SWORN STATEMENT

I, **MANUEL A. COLON CABRERA**, of legal age, single, attorney, resident of Carolina, Puerto Rico, have read and revised the verified complaint AND KNOW THE CONTENTS THEREOF. I HEREBY DECLARE, BASED UPON DISCUSSIONS WITH COUNSEL AND/OR CONSULTANTS AND UPON REVIEW OF THE DOCUMENTS AVAILABLE AT THE TIME, THAT THE ALLEGATIONS IN THE VERIFIED COMPLAINT ARE TRUE AND CORRECT TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF.

**I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT:**

DATED: OCTOBER 6 2009

SIGNED AND ACCEPTED

_____
MANUEL A. COLON CABRERA