IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MANUEL A. COLÓN-CABRERA,

        Plaintiff

          v.

ESSO STANDARD OIL COMPANY, et
al.,

        Defendants

CIVIL NO. 09-2032 (JP)

---

## <u>OPINION AND ORDER</u>

Before the Court are motions to dismiss by Defendant Esso Standard Oil Company (Puerto Rico) ("Esso") **(No. 10)** and Defendants Environmental Resource Technologies Corp. ("ERTEC") and José Carlos Agrelot-Peña ("Agrelot") **(No. 17),** Plaintiff Manuel Colón-Cabrera's ("Cabrera") oppositions to the motions to dismiss (Nos. 18 and 28), the parties' replies (Nos. 25 and 36), and surreplies thereto (Nos. 31 and 39). Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). For the reasons stated herein, the Court hereby **DENIES** Defendant Esso's motion to dismiss and **GRANTS IN PART AND DENIES IN PART** Defendants ERTEC and Agrelot's motion to dismiss.

## I.   <u>PLAINTIFF'S FACTUAL ALLEGATIONS</u>

Plaintiff Cabrera alleges that at all times relevant to the complaint Esso and/or Exxon Mobil Company ("Exxon") were the owners

CIVIL NO. 09-2032(JP)                -2-

and/or operators of the gasoline, diesel underground storage tanks and servicing equipment in the Esso Service Station located at Road No. 2, Km. 29 in the Municipality of Vega Alta, Puerto Rico (the "Station"). Plaintiff filed the instant complaint on October 6, 2009 alleging that Defendant Esso has known about gasoline leaks from the Station's underground storage tanks ("UST") and product lines since at least 1983. Further, Esso has known about the disposing of used oil and grease into the facility soils since at least 1978.

Plaintiff alleges that the above-mentioned contamination has caused considerable damage to his properties and that this contamination remains unreported and unabated. Also, the petroleum contamination has not been delineated or removed. On January 5, 1977, Esso was informed that used oil had been disposed of on the ground of the Station and that it was entering surface waters. On June 23, 1983, Esso was informed that their facility operator was disposing of grease on the ground behind the Station. Also on that date, Plaintiff alleges that Esso conducted an investigation and found a leak of leaded and unleaded gasoline. On November 23, 1978, Plaintiff alleges that Esso admitted to the mishandling of used oil and grease by its facility operator. On December 27, 1984, Esso "admitted the release" of 792 gallons of product into the soils of the facility. Plaintiff alleges that this has not been reported to the Puerto Rico Environmental Quality Board ("EQB").

CIVIL NO. 09-2032(JP)            -3-

On September 30, 1991, Esso contracted the services of Soil Tech (now ERTEC) to perform a Tank Closure Report in order to determine the conditions of the removed tanks and the surrounding soil. The results were presented to the EQB and showed the presence of Total Petroleum Hydrocarbon ("TPH") in the facility soils. The TPH was found in concentrations up to 5,919 mg/kg in the soils, above the 100 mg/kg level accepted by the EQB. The report also found that one of the USTs had corrosion holes. Plaintiff alleges that Soil Tech recommended to Esso not to investigate further the environmental conditions at the site.

On May 22, 2001, the EQB ordered Esso to define the extent of the contamination at the site. On August 9, 2004, ERTEC requested that the EQB release them from the agency requirement to investigate the presence of organic lead, although allegedly ERTEC knew that leaded gasoline was released at the site. On February 7, 2005, ERTEC certified to Plaintiff Cabrera that the vertical and horizontal delineation of the Station contamination was delineated. However, on April 29, 2009, ERTEC admitted to Plaintiff that the vertical and horizontal delineation of the Station contamination had not been delineated.

On February 5, 2007, ERTEC gave Esso a Phase II Environmental Evaluation of the Station. The Phase II Environmental Evaluation concluded that the groundwater below the Station was contaminated

CIVIL NO. 09-2032(JP)                    -4-

with the gasoline constituent benzene.    Benzene is a hazardous substance regulated by the Environmental Protection Agency ("EPA"). The Maximum Contaminant Level ("MCL") of dissolved benzene in ground water is 5 micrograms per liter of water (5.0 mg/l) or 0.5 mg/l for drinking water.    Plaintiff alleges that the samples obtained below the Station in August 2006 revealed concentration of benzene as high as 15,000 mg/l.

     Plaintiff further alleges that Friedman & Bruyo, Environmental Chemists told ERTEC that there was a large pool of product containing organic lead in the groundwater beneath the Station.    At present, Esso has not reported or investigated the horizontal and vertical extent of this contamination.

     Plaintiff also alleges that in 2004, ERTEC perforated the diesel line at the Service Station while drilling borings.    This contributed to the soils and groundwater contamination.    The line was not fixed immediately.    On August 27, 2004, Esso determined that the incident was caused by the use of improper equipment to verify the presence of underground pipelines.    Finally, Plaintiff alleges that on January 30, 2009, it was found that ERTEC left the facility monitoring well open (without lock-caps) converting them into injection wells, which caused the further spread of contamination by ERTEC and Agrelot.

CIVIL NO. 09-2032(JP)            -5-

## II.  <u>LEGAL STANDARD FOR A 12(b)(1) AND 12(b)(6) MOTION TO DISMISS</u>

Motions brought under Federal Rule of Civil Procedure ("FRCP") 12(b)(1) are subject to a similar standard as FRCP 12(b)(6) motions.  <u>Torres Maysonet v. Drillex, S.E.</u>, 229 F. Supp. 2d 105, 107 (D.P.R. 2002).  According to the Supreme Court, "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."  <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 561-62 (2007).  As such, in order to survive a motion to dismiss, a complaint must state a claim to relief that is plausible on its face, not merely conceivable.  <u>Id.</u> at 570. The Court of Appeal for the First Circuit has interpreted <u>Twombly</u> as sounding the death knell for the oft-quoted language of <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  <u>Rodríguez-Ortiz v. Margo Caribe, Inc.</u>, 490 F.3d 92, 94-95 (1st Cir. 2007) (quoting <u>Twombly</u>, 550 U.S. at 561).  Still, a court must "treat all allegations in the Complaint as true and draw all reasonable inferences therefrom in favor of the plaintiff."  <u>Rumford Pharmacy, Inc. v. City of East Providence</u>, 970 F.2d 996, 997 (1st Cir. 1992).

CIVIL NO. 09-2032(JP)            -6-

III. **ANALYSIS**

Plaintiff alleges a cause of action against Defendants under 42 U.S.C. §§ 6972(a)(1)(A) and 6972(a)(1)(B). Defendants Esso, ERTEC and Agrelot move to dismiss Plaintiff's complaint arguing that Plaintiff fails to allege activities that would constitute a continuing violation of the RCRA standard, as required for a citizen suit under subsection (a)(1)(A) and has not plead sufficient facts to support his claims of an imminent and substantial endangerment to health or the environment under subsection (a)(1)(B). The Court will examine each argument in turn.

**A.    Section 6972(a)(1)(A)**

Section 6972(a)(1)(A) provides that any person may commence a civil action:

> against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, prohibition, or order which has become effective pursuant to this chapter . . .

To bring a suit under subsection (a)(1)(A), a plaintiff must allege an ongoing violation. See Francisco Sánchez v. Esso Standard Oil Co., 572 F.3d 1, 7 (1st Cir. 2009); Marrero Hernández v. Esso Standard Oil Co., 597 F. Supp. 2d 272, 282-83 (D.P.R. 2009). A plaintiff's suit cannot be based on wholly past violations. See e.g. Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc., 484 U.S. 49, 64 (1987) (holding that the phrase "in violation" in Section 505(a) of the Clean Water Act conferred jurisdiction for

CIVIL NO. 09-2032(JP)            -7-

citizen suits based on good faith allegations of "continuous" or "intermittent" violations).

   1. <u>Defendant Esso</u>

  Defendant Esso argues that a claim brought under subsection (a)(1)(A) is only available when Defendant's alleged violation is ongoing, and Defendant Esso is no longer the owner or operator of any facilities at the Station. Thus, Esso cannot be in continuous violation of the RCRA. Esso argues that Plaintiff merely alleges past failures to comply with environmental regulations, and that the presence of contamination does not constitute a continuing violation. Plaintiff alleges that Defendant Esso is currently in violation of Puerto Rico EQB's Underground Storage Tank Regulations, specifically the requirements of Rules 501, 503, 601, 602(A)(B), 603(A), 604(A)(C), 606(A)(1)(3), 607 and 1102(B), and its Federal counterparts in 40 C.F.R. §§ 280.50, 280.52, 280.60, 280.61, 280.62, 280.63, 280.65 and 280.66. Plaintiff alleges that, among other things, the violations include failing to report, investigate or clean up spills from underground gasoline storage tanks, failing to take immediate action to prevent additional spills or to identify and mitigate or mitigate danger of fire explosions, or toxic vapors, failing to undertake initial characterizations of the affected properties and quality of waters, failing to remove the free product,

CIVIL NO. 09-2032(JP)          -8-

failing to notify closing or modification of operations and contaminating the waters of Puerto Rico.

In his complaint, Plaintiff alleges that, at the present time, the petroleum contamination has not been delineated or removed, and that this contamination, which has caused damage to Plaintiff, remains unreported and unabated. Plaintiff also alleges that organic lead was found in the groundwater beneath the station in 2006 and that, at present, Defendant Esso has not reported or investigated the horizontal and vertical extent of this groundwater organic lead contamination.

Defendant Esso argues that it is no longer the owner or operator of the Station; however, Plaintiff alleges that Defendant Esso was the owner and/or operator at all times referred to in the complaint. See Francisco-Sánchez v. Esso Standard Oil de Puerto Rico, 2010 WL 682542, at *7 (D.P.R. Feb. 22, 2010) (finding that even if defendant "no longer exercises ownership or control over [the service station], defendant may have continuing obligations arising from its prior ownership, or may have been in default of its duties under EQB regulations since sometime before the change in title"). Defendant cites to no legal authority to support its position that any obligations it may have had ceased when it terminated its ownership or control of the Station. See id. If hazardous substances were previously released due to a spill or leak at the Station, as

CIVIL NO. 09-2032(JP)          -9-

Plaintiff alleges, then those releases would be subject to EQB regulation.  See id.

     Further, Plaintiff has not alleged wholly past violations as argued by Defendant.  Courts have found that the failure to take corrective action and to comply with the regulations in connection to a previous spill can constitute a continuous violation under subsection (a)(1)(A).  See e.g. Marrero Hernández v. Esso Standard Oil Co., 597 F. Supp. 2d 272, 283-84 (D.P.R. 2009); Raymond K. Hoxsie Real Estate Trust v. Exxon Educ. Foundation, 81 F. Supp. 2d 359, 364-65 (D.R.I. 2000) (citing to Dydio and finding that an owner's failure to adequately remediate a confirmed leak, regardless of when the leak took place, can constitute a current violation of § 6972(a)(1)(A)) Dydio v. Hesston Corp., 887 F. Supp. 1037, 1040 (N.D. Ill. 1995) (finding that "past owners of USTs have continuing obligations to take corrective action following the confirmed release of a regulated substance, and that [Plaintiff] ha[d] properly alleged a present violation of those regulations"); Gache v. Towne of Harrison, New York, 813 F. Supp. 1037, 1041 (S.D.N.Y. 1993) (holding that "improperly discharged wastes which continue to exist unremediated represent a continuing violation of RCRA").  In this case, Plaintiff has alleged sufficient facts to support the claim that the area of the Station is presently

CIVIL NO. 09-2032(JP)              -10-

contaminated, and that Defendant Esso has failed to take corrective action.

The Court finds that Plaintiff has alleged sufficient facts to support a claim against Defendant Esso under subsection (a)(1)(A).

    2.  Defendants ERTEC and Agrelot

Defendants ERTEC and Agrelot argue that Plaintiff refers to past activities for which ERTEC, as an environmental consultant, and Agrelot, as its owner and chief executive officer, cannot be held liable even if all the allegations in Plaintiff's complaint are taken as true.  Defendants ERTEC and Agrelot are not past or present owners or past or present operators of the facilities at the Station. Moreover, Plaintiff does not allege that Defendants ERTEC and Agrelot are the current owners or operators of the Station.

Plaintiff alleges that ERTEC while drilling borings at the Station perforated the diesel line releasing product that contributed to the soils and groundwater contamination, and that on August 27, 2004 Esso determined that the incident was caused by the use of improper equipment to verify the presence of underground pipelines. Plaintiff also alleges that on January 30, 2009, ERTEC left the monitoring well open converting them into injection wells, which caused the further spread of contamination.  Plaintiff also alleges that on April 29, 2009, ERTEC admitted to Plaintiff that the contamination at the station had not been delineated.

CIVIL NO. 09-2032(JP)              -11-

As stated above, a claim under § 6972 (a)(1)(A) can be "against any person . . . who is alleged to be in violation of any permit, standard, regulation, condition, requirement, [or] prohibition." The Court finds that Plaintiff's complaint fails to allege which "permit, standard, regulation, condition, requirement, [or] prohibition" Defendants ERTEC and Agrelot are "in violation of" as required for a claim under subsection (a)(1)(A).[1] Furthermore, while Plaintiff alleges ERTEC and Agrelot contributed to the contamination at the Station in the past, Plaintiff does not allege sufficient facts to support a claim for an ongoing violation under subsection (a)(1)(A). For instance, while Plaintiff alleges that the perforated diesel line was not fixed immediately, Plaintiff does not allege that diesel line remains unrepaired. The Supreme Court has explicitly stated that "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do . . . . Nor does a complaint  suffice if it tenders naked assertion[s] devoid of further factual enhancements." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 127).

Accordingly, the Court finds that Plaintiff has failed to allege sufficient facts to support a claim under subsection (a)(1)(A) against Defendants ERTEC and Agrelot.

---

1.    Indeed, in describing the nature of the action at the beginning of Plaintiff's complaint, Plaintiff only mentions Defendant Esso, and states "[t]he law suit seeks enforcement and/or injunctive relief against Esso as violator of R.C.R.A., pursuant 42 U.S.C. sec 6972."

CIVIL NO. 09-2032(JP)          -12-

   **B.   Section 6972(a)(1)(B)**

   Section 6972(a)(1)(B) provides that any person may commence a cause of action:

> against any person . . . including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which **may present an imminent and substantial endangerment to health or the environment**[].

(emphasis added).  For a suit under subsection (a)(1)(B), Plaintiff must allege an imminent and substantial endangerment to health or the environment.  The First Circuit has noted that the word "may" in subsection (a)(1)(B) was intended to make the provision expansive in order to give the courts the tools to "eliminate any risks posed by toxic waste." Maine People's Alliance and Natural Resources Defense Council v. Mallinckodt, Inc., 471 F.3d 277, 287 (1st Cir. 2006), *cert. denied,* 552 U.S. 816 (2007) (quoting S. Rep. No. 98-284, at 59 (1983)); Marrero Hernández v. Esso Standard Oil Co., 597 F. Supp. 2d 272, 287 (D.P.R. 2009) (noting that a "plaintiff need not establish an incontrovertible imminent and substantial harm to health and the environment") (internal citations omitted).

        1.  Defendant Esso

   Defendant Esso argues that Plaintiff fails to allege sufficient facts to support a claim for imminent and substantial endangerment

CIVIL NO. 09-2032(JP)              -13-

under subsection (a)(1)(B).  Defendant argues that Plaintiff's only allegation in the complaint asserts that the imminent and substantial endangerment to health and the environment is caused by the continuous contamination of the groundwater aquifer below the service station.  Defendant also argues that Plaintiff alleges no specific facts to support his assertion that any contaminants that may be found at or below the Station exist at levels that constitute an imminent and substantial endangerment to health and to the environment.

In his complaint, Plaintiff alleges that Defendant discovered, among other contaminants, organic lead contamination in the groundwater.  Plaintiff also alleges that a high concentration of benzene, a carcinogenic substance, was discovered in the groundwater in 2007.  Plaintiff  avers that no effective clean up of the soil or groundwater has been undertaken by Defendant Esso, and that he is continuously exposed to benzene, toluene or lead which poisons his land, the waters and the environment.

The Court finds that Plaintiff's averments concerning the presence of benzene in the groundwater, among other harmful contaminants found at the Station, taken as true, suggest a substantial endangerment to the health of Plaintiff, the public and to the environment.  Thus, Defendant's motion to dismiss on the

CIVIL NO. 09-2032(JP)            -14-

ground that Plaintiff fails to allege an imminent and substantial endangerment to the health and to the environment is denied.

2.   <u>Defendants ERTEC and Agrelot</u>

Defendants ERTEC and Agrelot argue that ERTEC and Agrelot are not past or present generators, owners or operators of the facilities at the station.  Defendants also argue that the complaint fails to make a claim for imminent and substantial endangerment under subsection (a)(1)(B).

Contrary to the arguments made by Defendants, under § 6972(a)(1)(B), a civil action may be against any person "who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste [ ]." In his complaint, Plaintiff's averments include that Soil Tech (now ERTEC) recommended to Esso not to investigate further the environmental conditions at the site after the investigation reported finding a UST with various corrosion holes, that ERTEC while drilling borings at the Station perforated the diesel line releasing product that contributed to the soils and groundwater contamination, and that the line was not fixed immediately.

The Court, as stated above, concluded that Plaintiff's allegations regarding the presence of benzene in the groundwater, among other harmful contaminants found at the Station, taken as true,

CIVIL NO. 09-2032(JP)            -15-

suggest a substantial endangerment to the health of Plaintiff, the public and to the environment.  Therefore, Defendants' argument that Plaintiff does not make a claim for imminent and substantial endangerment under subsection (a)(1)(B) fails.

Taking all of Plaintiff's allegations as true, the Court finds that Plaintiff has alleged sufficient facts to maintain a claim against Defendants ERTEC and Agrelot pursuant to subsection (a)(1)(B).

**IV.  CONCLUSION**

For the reasons stated herein, the Court hereby **DENIES** Defendant Esso's motion to dismiss, and **GRANTS IN PART AND DENIES IN PART** Defendants ERTEC and Agrelot's motion to dismiss.  The Court will enter a separate judgment dismissing with prejudice Plaintiff's 42 U.S.C. § 4962(a)(1)(A) claims against Defendants ERTEC and Agrelot.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 25th day of January, 2011.

                                    s/José Antonio Fusté
                                 JOSÉ ANTONIO FUSTÉ
                               CHIEF U.S. DISTRICT JUDGE